# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 2531 | **DATE** | 11/10/2004 |
| **CASE TITLE** | Manuel vs. Lucenti | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing is set for 12/8/04 at 9:30AM.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER ORDER. For the reasons stated in the attached memorandum opinion and order, defendants' motion to strike [9-1] is denied. Defendants' motion to dismiss [8-1] is granted in part and denied in part. Counts II and V of plaintiffs' complaint are hereby dismissed with prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | NOV 16 2004 | |
| | Notified counsel by telephone. | | date docketed | 19 |
| X | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| RJ/ec courtroom deputy's initials | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JULIA MANUEL, DARRIN RAINES, and RONNIE RAINES, <br><br> Plaintiffs, <br><br> v. <br><br> ROBERT C. LUCENTI, ESQ., and KEVIN P. BOLGER, ESQ. <br><br> Defendants. | Case No. 04-C-2531 <br><br> Judge Joan B. Gottschall |

## MEMORANDUM OPINION AND ORDER

Before this court are defendants' motions to strike certain paragraphs of plaintiffs' complaint pursuant to FED. R. CIV. P. 8 and 12(f) and to dismiss plaintiffs' complaint pursuant to FED. R. CIV. P. 12(b)(1) and (6). For the reasons set forth below, defendants' motion to strike is denied, and defendants' motion to dismiss is granted in part and denied in part.

## BACKGROUND

According to plaintiffs' *pro se* complaint, Ronnie Raines ("Raines"), an African American, hired defendant Lucenti to represent him as his attorney in a case involving federal criminal drug charges. Lucenti then engaged defendant Bolger to make court appearances on Raines's behalf. Plaintiffs Julia Manuel and Darrin Raines,[1] who are also African American, helped pay Raines's attorney's fees. Raines pled guilty to at least some of the charges against him and received a sentence of life in prison.

Although the majority of plaintiffs' complaint focuses on alleged misconduct on the part

---

[1] Julia Manuel and Darrin Raines are Ronnie Raines's mother and brother. The three are referred to collectively as "plaintiffs." All subsequent references to "Raines" refer to Ronnie Raines.

-1-

of Raines's attorneys that sounds in legal malpractice and fraud theories, including failure to give effective advice, failure to appear in court, withholding documents and information, failure to return phone calls, insistence on undocumented cash payments and general failure to perform promised services, plaintiffs' complaint alleges violations of three federal laws. Specifically, plaintiffs claim that defendants violated 42 U.S.C. § 1981 by failing to provide legal services to plaintiffs using the same degree of skill with which they provided services to Caucasian clients (Count I), conspired to violate plaintiffs' equal protection rights in violation of 42 U.S.C. § 1985 (Count II) and engaged in a pattern of criminal activity in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.* (Count V).

The core of defendants' motions to strike and to dismiss involves the allegations pled by plaintiffs in support of these federal claims. In their complaint, plaintiffs set forth in detail several conversations that allegedly took place between defendants in which defendants, allegedly motivated by plaintiffs' race, conspired to take plaintiffs' money and deprive Raines of adequate legal services. By way of illustration, plaintiffs allege that the following conversation between the defendants took place on or about July 27, 2001:

> ... Lucenti called Defendant Bolger at his office, asking him if he wanted to make at least $10,000 and possibly $20,000 without doing nothing [*sic*] more than making some prefunctory [*sic*] court appearances in Wisconsin. Defendant Bolger ... asked for the details. Lucenti stated that it concerned some "black dope head who I earned a few dollars off over the years," who was in trouble federally and that he saw a chance to get some extra money from his family without much or any work. Lucenti told Bolger that ... all Bolger had to do was show up in court until they received another $20,000 they could "let the feds bury" [Raines] ... Bolger told Lucenti that as long as [the plaintiffs] were African Americans and will not know what was going on in his handling of the case then he would have no problem taking their money.

Complaint ¶¶ 78-83. Plaintiffs similarly describe other ostensibly private conversations between the defendants throughout the complaint, and also plead other facts that defendants maintain

plaintiffs cannot purport to know. *See, e.g.*, Complaint ¶ 73 ("On or about from 1977 to 2001, Lucenti issued bona fide receipts to his Caucasian clients along with an outline or a list of things he would be performing and accepted checks of all kinds from them.") Defendants maintain that they are entitled to the relief they seek primarily because these allegations are not well pleaded facts.

## ANALYSIS

I. **Motion to Strike.**

A. **Short and Plain Statement of the Claim.**

Defendants first move to strike portions of plaintiffs' complaint under FED. R. CIV. P. 8(a)(2), which requires that the complaint be a short and plain statement of the claim showing that the pleader is entitled to relief. Defendants object that the complaint "consists of 244 paragraphs and is a confused mix of fact, unnecessary history, editorializing, fiction and fantasy ... [and] is rife with surplusage ...." Defs.' Mtn. to Strike, ¶ 8. Motions to strike under Rule 8(a) are disfavored as long as portions of the complaint have put defendants on notice of the claims against them, particularly when striking the disputed paragraphs may result in dismissal. *See, e.g., Davis v. Ruby Foods, Inc.*, 269 F.3d 818, 820 (7th Cir. 2001) ("complaints signed by a lawyer are never dismissed simply because they are not short, concise, and plain"); *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998) (noting that "[f]at in a complaint can be ignored"). Moreover, as defendants recognize, *pro se* complaints are held to less exacting standards than complaints drafted by attorneys. *See Donald v. Cook County Sheriff's Dept.*, 95 F.3d 548, 555 (7th Cir. 1996) ("It is, by now, axiomatic that district courts have a special responsibility to construe *pro se* complaints liberally[.]"). In any event, while defendants apparently take issue with much of the complaint, the only specific paragraphs to which defendants direct the court are

paragraphs 12-37, detailing Raines's first meeting with Lucenti. The court declines to use Rule 8 to strike these 25 paragraphs offered as background material from a *pro se* complaint.

## B. Immaterial, Impertinent, or Scandalous Matter.

The Federal Rules also allow the court to remove material from a pleading that it finds "'redundant, immaterial, impertinent, or scandalous." FED. R. CIV. P. 12(f). To prevail on a motion to strike under Rule 12(f), defendants must demonstrate that the material at issue does not bear on the subject matter of the litigation and will prejudice the defendants. *See, e.g., NOW, Inc. v. Scheidler*, 897 F. Supp. 1047, 1087 n. 28 (N.D. Ill. 1995) ("[t]o strike portions of a complaint, the allegations being challenged must be so unrelated to plaintiff's claims as to be void of merit and unworthy of any consideration" and "must be prejudicial to the movant" (citations omitted)). As with motions to strike under Rule 8, motions to strike under Rule 12(f) are disfavored and usually denied. *Spearman Indus., Inc. v. St. Paul Fire & Marine Ins. Co.*, 109 F. Supp. 2d 905, 907 (N.D. Ill. 2000).

Defendants object to 61 paragraphs in plaintiffs' complaint detailing alleged private conversations and activities that defendants maintain plaintiffs could not possibly know about. Although defendants also couch their opposition to the disputed paragraphs in terms of immateriality and scandal, these objections are valid only if the allegations are false. Defendants therefore are moving to strike the disputed paragraphs from plaintiffs' complaint on the basis that it is highly improbable that the allegations are true, but Rule 12(f) is not the appropriate mechanism to request such relief. *See, e.g., Boyd v. United States*, 861 F.2d 106, 109 (5th Cir. 1988) (falsity of a pleading does not provide sufficient basis for granting motion to strike under Rule 12(f)); *Kinee v. Abraham Lincoln Federal Sav. and Loan Ass'n*, 365 F. Supp. 975, 982 (E.D. Pa. 1973) (allegations that portions of pleading were "patently untrue" and therefore

impertinent and scandalous not a proper 12(f) ground).

Although the court cannot strike the contested portions of plaintiffs' complaint, it cautions plaintiffs that the Federal Rules require responsible pleading, including responsible pleading in the alternative. While Rule 8(e)(2) allows pleading in the alternative and hypothetical pleading, it does not relieve the party of its Rule 11 obligations. In particular, each party is required to certify to the best of its "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that "the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery ... ." FED. R. CIV. P. 11(b)(3). In other words, Rule 11 does not tolerate allegations based merely on speculation. The court strongly urges plaintiffs to evaluate carefully the evidentiary bases for the allegations in its complaint. If the record ultimately demonstrates that allegations were never supported by anything more than plaintiffs' subjective speculation, sanctions will be appropriate. As the court has previously cautioned plaintiffs, they are not allowed to rely on unfounded conjecture to enable a legal malpractice claim to masquerade as a federal civil rights action.

## II. Motion to Dismiss.

When ruling on a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), the court must accept the factual allegations in the plaintiffs' complaint as true. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993). The court then considers whether any set of facts consistent with the allegations could support plaintiffs' claim for relief. *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir. 1992). A complaint need only contain enough facts to put the defendant on notice of the claim so that an answer can be framed. *Flannery v. Recording Indus. Assoc. of America*, 354 F.3d 632, 639 (7th Cir. 2004).

Dismissal should be granted only if it is "beyond doubt" that the plaintiff cannot prove any facts to support a claim entitling plaintiff to relief. *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). Complaints prepared *pro se*, such as plaintiffs', are given greater latitude. *Id.*

### A. Civil Rights Claims.

Plaintiffs indicate that they wish to voluntarily dismiss Count II of their complaint, alleging conspiracy to violate equal protection rights in violation of 42 U.S.C. § 1985. The court, therefore, first turns to plaintiffs' intentional discrimination claim under 42 U.S.C. § 1981. Section 1981 provides that "all persons within the jurisdiction of the United States shall have the same right in every State ... to make and enforce contracts ... as is enjoyed by white citizens." 42 U.S.C. § 1981(a). This right "includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). To establish a claim under Section 1981, plaintiffs must allege that (1) they are members of a racial minority; (2) defendants intended to discriminate on the basis of race; and (3) the discrimination concerned the making and enforcing of a contract. *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996).

Defendants argue that the court must consider only plaintiffs' "well pleaded" facts, and argues that they are insufficient to support an inference that defendants' performance and billing practices were motivated by racial animus. For example, defendants maintain that plaintiffs' allegation that defendants refused to accept checks from or issue receipts to plaintiffs lacks a corresponding allegation that defendants routinely accepted checks from Caucasian clients and issued them receipts. *See* Defs.' Mtn. to Dismiss at 8. But this is not so. As noted above, plaintiffs' complaint alleges that Lucenti did issue receipts to his Caucasian clients from 1977 to 2001, and "accepted checks of all kinds from them." Complaint ¶ 73. Plaintiffs' complaint

-6-

contains enough specificity to put defendants on notice of a colorable violation of Section 1981, particularly in light of the liberal construction that must be afforded *pro se* plaintiffs' claims.

In essence, defendants' motion to dismiss plaintiffs' Section 1981 count presents the same argument as their motion to strike, which was premised on defendants' disbelief of the incredible nature of plaintiffs' allegations. But Rule 12(b)(6), like Rule 12(f), is an inappropriate mechanism for dismissal of claims based on apparent falsity. *See Walker v. National Recovery, Inc.*, 200 F.3d 500, 503 (7th Cir. 1999). This court must honor plaintiffs' request to review their allegations "without any judgment call on whether they are believable or not." Ptfs.' Rsp. at 6. However, the court notes that the core of plaintiffs' Section 1981 claim – that plaintiffs received overpriced and deficient legal services compared to Caucasian clients – has a dubious chance of success in light of fact that attorneys are entitled to make fee judgments based upon the individual facts of each case, and plaintiffs will have a hard time accessing relevant material on this issue.

**B.     RICO Claim.**

Defendants next move to dismiss plaintiffs' claim under RICO. The RICO statute was originally enacted "in an attempt to eradicate organized, long-term criminal activity." *Mira v. Nuclear Measurements Corp.*, 107 F.3d 466, 473 (7th Cir. 1997). RICO makes it unlawful (1) to invest money derived from a pattern of racketeering activity or through the collection of an unlawful debt in an enterprise; (2) to acquire or maintain an interest in or control of an enterprise through a pattern of racketeering activity or through collection of an unlawful debt; (3) for any person employed by or associated with any enterprise to conduct the enterprise's affairs through a pattern of racketeering activity or collection of an unlawful debt. 18 U.S.C. § 1962(a)-(c). A "pattern of racketeering activity" under the RICO statute is established by the commission of at

least two of the predicate acts enumerated in 18 U.S.C. § 1961(1) within a ten-year period. 18 U.S.C. § 1961(5).

Plaintiffs' claim fails because their complaint does not sufficiently plead a pattern of racketeering activity. Plaintiffs maintain that the pattern of racketeering activity can be derived from defendants' allegedly fraudulent conduct, directing the court to 225 paragraphs of their complaint. Ptfs.' Rsp. at 9. However, the facts set forth in the complaint, which are specific to defendants' interactions with plaintiffs, do not provide evidence that the defendants are engaged in a criminal enterprise. *See, e.g., Pizzo v. Bekin Van Lines Co.*, 258 F.3d 629, 632 (7th Cir. 1999) (several allegations of mail and wire fraud arising out of single dispute with store do not constitute a pattern). As the Seventh Circuit explained in *Pizzo*,

> A criminal enterprise, as distinct from a normal enterprise that gets in trouble with the law from time to time, is an enterprise that *habitually* resorts to illegal methods of doing business. It is an enterprise whose disposition, whose bent, is criminal--as shown by its illegal acts' composing a pattern from which such a disposition can be inferred, in much the same way that an individual's generous disposition is inferred from a pattern of generous acts, acts frequent enough and similar enough to enable such an inference.

*Id.* at 633 (emphasis in original). In the present case, although plaintiffs complain of 21 alleged acts committed by defendants, these allegations at best show improper activities directed toward plaintiffs arising out of defendants' representation of Raines. They do not provide evidence that would allow a trier of fact to extrapolate a danger of recurrence, and no inference can be drawn from the allegations that defendants are a criminal enterprise engaged in a pattern of fraudulent activity. *See id.* ("[W]e are sure that not all retail stores in the United States are violating RICO; yet we imagine that every retail store in the United States has at least two customers mad enough at it to cry fraud.").

Plaintiffs' RICO claim is also doomed because the alleged acts to which plaintiffs direct

the court relate to fraud under Illinois law, and fraud is not one of the state law crimes that RICO includes as a predicate act. *See* 18 U.S.C. § 1961(1)(A). Rather, only violations of particular federal fraud statutes (specifically wire and mail fraud) constitute predicate acts under RICO. *See* 18 U.S.C. § 1961(1)(B). Perhaps plaintiffs anticipated this, as their complaint also contains some references to defendants' "wire, Internet [and] phone meetings" with defendants and others that they claim constitute wire fraud under 18 U.S.C. § 1343. Complaint ¶ 249. However, these allegations cannot save the RICO claim.

As an initial matter, the parties in this action are all alleged to be citizens of the state of Illinois. Thus, many of the telephone conversations at issue presumably would not be interstate communications, which are an essential element of the federal wire fraud statute. 18 U.S.C. § 1343. *See also H.G. Gallimore, Inc. v. Abdula*, 652 F. Supp. 437, 441 (N.D. Ill. 1987) (telephone calls alleged in the complaint were not predicate offenses under RICO because they all took place within the State of Illinois). In fact, plaintiffs even complain that defendants formed their enterprise to target "unsuspecting citizens *in the state of Illinois.*" Complaint ¶ 249 (emphasis added).

Plaintiffs' complaint does allege that Raines and Lucenti communicated by telephone while Raines was incarcerated in Wisconsin. However, these interstate calls at best might be considered part of a single scheme to defraud, which, as discussed above, is insufficient to meet the pattern requirement. Moreover, with the possible exception of these conversations, plaintiffs plead no facts specifically supporting a claim of federal wire fraud. Rather, plaintiffs complain generally that defendants engaged in similar behavior directed toward other African Americans. These allegations do not meet the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure. *See Lachmund v. ADM Investor Servs., Inc.*, 191 F.3d 777, 782 (7th

Cir. 1999) (Rule 9(b) standard applies to fraud allegations under RICO); *see also Cherry v. Hall*, No. 02 C 7895, 2003 WL 29931 at *1 (N.D. Ill. Jan. 3, 2003) (applying Rule 9(b) standard to *pro se* plaintiff's RICO claim).

Rule 9(b) requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." FED. R. CIV. P. 9(b). In other words, plaintiffs' complaint must state "the who, what, when, where, and how" with respect to each allegation supporting their claim of wire fraud. *See DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). Plaintiffs have not done so. Terse, generalized allegations such as plaintiffs' are insufficient to plead a predicate act under RICO. *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1326-28 (7th Cir. 1994).[2] Because plaintiffs have failed to plead a pattern of racketeering activity and the only potential predicate acts they allege fall far short of Rule 9(b)'s heightened pleading standard, their RICO claim must be dismissed.

C.  **State Law Claims.**

Defendants do not substantively address plaintiffs' state law claims other than to object to plaintiffs' "conclusory allegations." Defendants devote two sentences to plaintiffs' common law fraud claim, maintaining that plaintiffs have failed to plead that claim with required particularity. This argument fails. Although plaintiffs did not plead a pattern of wire fraud under RICO, their allegations of common law fraud are somewhat more detailed. Plaintiffs cite to specific conversations in which defendants allegedly intentionally made untrue statements to plaintiffs that plaintiffs relied upon to their detriment. These allegations are sufficiently particular to meet Rule 9(b)'s heightened pleading standard.

---

[2] The court also notes that plaintiffs' complaint makes vague references to defendants' activities that perhaps could be construed as allegations of mail or tax fraud, but these allegations also fall far short of Rule 9(b)'s heightened pleading standard.

-10-

Defendants also argue that this court can decline to exercise jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 after it has dismissed the claims over which it has original jurisdiction. Because plaintiffs' Section 1981 claim survives defendants' motion to dismiss, however, it is improper to dismiss plaintiffs' state counts on this basis.

## CONCLUSION

For the foregoing reasons, defendants' motion to strike is denied. Defendants' motion to dismiss is granted in part and denied in part. Counts II and V of plaintiffs' complaint are hereby dismissed with prejudice.

ENTER:

Joan B. Gottschall
United States District Judge

DATED: November 10, 2004